**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LOCAL UNION NO. 98 : <br> INTERNATIONAL BROTHERHOOD OF : <br> ELECTRICAL WORKERS, et al., : <br> : CIVIL ACTION <br> Plaintiffs, : <br> : <br> v. : <br> : NO. 15-0815 <br> LP HERMAN COMPANY, LAWRENCE : <br> HERMAN, AND PHYLLIS DIVENTI, : <br> : <br> Defendants. : | |

**MEMORANDUM**

BUCKWALTER, S. J.                                                                                                                                               July 14, 2015

Currently pending before the Court are the Motions by Defendants LP Herman Company and Lawrence Herman (collectively, "Defendants") and by Defendant Phyllis Diventi to Dismiss the Complaint of Plaintiffs Local Union No. 98, International Brotherhood of Electrical Workers ("IBEW"); Trustees of the IBEW Local Union No. 98 Health and Welfare Fund; Trustees of the IBEW Local Union No. 98 Pension Fund; Trustees of the IBEW Local Union No. 98 Profit Sharing/Deferred Income Fund; Trustees of the IBEW Local Union No. 98 Joint Apprenticeship Training Trust Fund; Trustees of the IBEW Local Union No. 98 Labor-Management Cooperation Committee Fund; and Trustees of the IBEW Local Union No. 98 Scholarship Fund (collectively, "Plaintiffs") pursuant to Federal Rule of Civil Procedure 12(b)(6). For the

following reasons, Defendant Phyllis Diventi's Motion is granted[1] and Defendants' Motion is granted in part and denied in part.

I.  **FACTUAL BACKGROUND**

Plaintiff Local Union No. 98, International Brotherhood of Electrical Workers ("Local Union No. 98") is an unincorporated association, commonly known as a labor union, with a principal place of business in Philadelphia, Pennsylvania.  (Compl. ¶ 5.)  Additional Plaintiffs[2] are the Local Union No. 98 Health & Welfare Fund, Pension Fund, Apprentice Training Fund, Profit Sharing/Deferred Income Fund, Labor-Management Cooperation Committee Fund, and Scholarship Fund (the "Multi-Employer Benefit Funds Plaintiffs"), which are multi-employer benefit funds established under § 302(c) of the LMRA, 29 U.S.C. § 186(c)(5), and § 3(3) and (37) of ERISA, 29 U.S.C. § 1002(3) and (37), and which have a principal place of business in Philadelphia, Pennsylvania.  (Id. ¶ 6.)

Defendant LP Herman Company is a Pennsylvania limited liability company with a principal place of business in Montgomeryville, Pennsylvania that engages in the business of providing electrical services to the consuming public and regularly conducts business or otherwise utilizes the marketplace of Philadelphia County.  (Id. ¶ 8.)  At all relevant times, Defendant LP Herman Company acted by and through its duly authorized employees, agents, workers, and/or representatives acting within the scope of their employment.  (Id.)

---

[1] Because Plaintiffs do not oppose dismissal of the sole count in the Complaint against Defendant Phyllis Diventi, Diventi's Motion to Dismiss is granted.  Facts which are relevant only to the claim against her are not included in the Court's factual background discussion.

[2] The individually named Plaintiffs listed in the full case caption are trustees of the Multi-Employer Benefit Funds described above and are fiduciaries of those Funds within the meaning of 29 U.S.C. § 1002(21), and are authorized to advance this action on behalf of the Funds for which they are trustees. (Compl. ¶ 7.)

Defendant Lawrence Herman is an adult individual with an address for service of process in Montgomeryville, Pennsylvania who was an agent, servant, employee, and principal of Defendant LP Herman Company and who acted within the course and scope of his employment with Defendant LP Herman Company. (Id. ¶ 9.) Defendant Lawrence Herman signed a Letter of Assent on behalf of Defendant LP Herman Company for labor agreements with Local Union No. 98 on September 5, 1989. (Id., Ex. A.) Defendant Lawrence Herman signed the Letter of Assent as the "Owner" of Defendant LP Herman Company. (Id.)

At all relevant times, Defendant LP Herman Company was a party to the multi-employer collective bargaining agreement ("CBA") between Local Union No. 98 and the Philadelphia division of the Penn-Del-Jersey Chapter, National Electrical Contractor's Association (the "Commercial Agreement"). (Id. ¶ 12.) The CBA was in effect from May 3, 2010 until April 20, 2013. (Id., Ex. B, Commercial Agreement, Art. I, Section 1.01.) Pursuant to the provisions of the Trust Agreements establishing the Health & Welfare Fund, the Pension Fund, the Apprentice Training Fund, and the Profit Sharing/Deferred Income Fund, at all relevant times, titles to all monies payable to those Funds were vested in the trustees of the Funds in trust as of the date the employer's obligation to submit contribution to the Funds arose. (Id. ¶¶ 12–18, Exs. C, D, E, F.) Pursuant to the provisions of the Trust Agreements establishing the Labor-Management Cooperation Committee Fund and the Scholarship Fund, as amended, at all relevant times, titles to all monies payable to those Funds become vested in the trustees of the Fund in trust as of the date the contributions are received. (Id. ¶¶ 17–18, Exs. G, H.)

Pursuant to Article II, Section 2.03(d) of the Commercial Agreement, Defendant LP Herman Company is obligated to furnish monthly reports to Local Union No. 98 listing the names of the members of the Union it employs and the number of hours of employment and

3

gross earnings of each member. (Id. ¶ 19.) Pursuant to the Commercial Agreement, Defendant LP Herman Company agreed to participate in the Labor-Management Cooperation Committee Fund, the Health and Welfare Fund, the Pension Fund, the Profit Sharing/Deferred Income Fund, the Apprentice Training Fund, and the Scholarship Fund; comply with applicable provisions of the Trust Agreements establishing those Funds; and provide monthly contribution payments consistent with the terms of the various Trust Agreements and the Commercial Agreement. (Id. ¶¶ 20, 22–25, 28; Compl. Ex. B, Commercial Agreement, Art. III, Sections 3.02–3.06, 3.09.) Pursuant to Article III, Section 3.07 of the Commercial Agreement, Defendant LP Herman Company is obligated to deduct an amount specified in the approved Local Union No. 98 By-Laws designated as Working Dues from the pay of each Local Union No. 98 member and remit the withholdings in lump sum monthly payments to the Financial Secretary of Local Union No. 98. (Id. ¶ 26.) Pursuant to the Commercial Agreement, Defendant LP Herman Company is obligated to deduct an amount specified as designated Vacation Fund and Job Recovery Fund account dues from the pay of each Local Union No. 98 member and remit the withholdings in lump sum monthly payments to the Financial Secretary of Local Union No. 98. (Id. ¶¶ 27, 29, Ex. B, Commercial Agreement, Art. III, Section 3.08 and Appendix A.) Plaintiffs allege that, in spite of the above Agreements and provisions, and despite Plaintiffs' repeated demands, Defendant LP Herman Company has filed to timely remit contributions and deductions due and owing. (Id. ¶ 31.)

      Plaintiffs filed a Complaint in this case on February 18, 2015. Defendant Phyllis Diventi filed a Motion to Dismiss Count V on April 16, 2015, and Defendants LP Herman Company and Lawrence Herman filed a Motion to Dismiss Counts I, II, III, IV, and VI of the Complaint on April 16, 2015. Plaintiffs filed a Response to Defendant Phyllis Diventi's Motion to Dismiss, in

which they indicated that they did not oppose her Motion to Dismiss, on May 1, 2015. Plaintiffs filed a Response in Opposition to the Motion to Dismiss by Defendants LP Herman Company and Lawrence Herman on May 1, 2015, in which they indicated that they did not oppose Defendants' Motion with respect to Counts III, IV, and VI, but that they do oppose Defendants' Motion with respect to Counts I and II. The Motion to Dismiss Counts I and II by Defendants LP Herman Company and Lawrence Herman is now ripe for judicial consideration.

## II.     STANDARD OF REVIEW

Under Rule 12(b)(6), a defendant bears the burden of demonstrating that the plaintiff has not stated a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6); see also Hedges v. United States, 404 F.3d 744, 750 (3d Cir. 2005). In Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007), the United States Supreme Court recognized that "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. at 555. Following these basic dictates, the Supreme Court, in Ashcroft v. Iqbal, 556 U.S. 662 (2009), subsequently defined a two-pronged approach to a court's review of a motion to dismiss. "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. at 678. Thus, although "Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era . . . it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." Id. at 678–79.

Second, the Supreme Court emphasized that "only a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. "Determining whether a complaint

states a plausible claim for relief will, as the Court of Appeals observed, be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. A complaint does not show an entitlement to relief when the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct. Id.; see also Phillips v. Cnty. of Allegheny, 515 F.3d 224, 232–34 (3d Cir. 2008) (holding that: (1) factual allegations of complaint must provide notice to defendant; (2) complaint must allege facts suggestive of the proscribed conduct; and (3) the complaint's "'factual allegations must be enough to raise a right to relief above the speculative level.'" (quoting Twombly, 550 U.S. at 555)).

Notwithstanding these new dictates, the basic tenets of the Rule 12(b)(6) standard of review have remained static. Spence v. Brownsville Area Sch. Dist., No. Civ.A.08-626, 2008 WL 2779079, at *2 (W.D. Pa. July 15, 2008). The general rules of pleading still require only a short and plain statement of the claim showing that the pleader is entitled to relief and need not contain detailed factual allegations. Phillips, 515 F.3d at 233. Further, the court must "accept all factual allegations in the complaint as true and view them in the light most favorable to the plaintiff." Buck v. Hampton Twp. Sch. Dist., 452 F.3d 256, 260 (3d Cir. 2006). Finally, the court must "determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." Pinkerton v. Roche Holdings Ltd., 292 F.3d 361, 374 n.7 (3d Cir. 2002).

## III. DISCUSSION

Defendants move to dismiss Plaintiffs' Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. Plaintiffs do not oppose dismissal of Counts Three, Four, Five, or Six, and, therefore, the Court will grant (a) Defendant Phyllis Diventi's Motion to Dismiss Count Five and (b) Defendant LP Herman Company and Defendant Lawrence Herman's Motion to Dismiss Counts Three, Four, and Six.

Accordingly, in this Opinion, the Court will only address Defendants' Motion to Dismiss Count One against Defendant LP Herman Company and Count Two against Defendant Lawrence Herman. Having considered the Complaint and its Exhibits, as well as the parties' briefs, the Court finds that Plaintiffs have sufficiently pled Count One and will deny Defendants' Motion to Dismiss with respect to that Count. In addition, the Court determines that Plaintiffs have sufficiently pled Count Two with respect to certain Funds, but not others. The Court will grant Defendants' Motion to Dismiss Count Two with respect to the Labor-Management Cooperation Committee Fund and the Scholarship Fund, but will deny Defendant's Motion to Dismiss Count Two with respect to the Health & Welfare Fund, the Pension Fund, the Apprentice Training Fund, and the Profit Sharing/Deferred Income Fund. The Court discusses each of Plaintiff's claims in Counts One and Two in turn.

### A.    Violation of 29 U.S.C. § 1145 (Count I)

Plaintiffs assert that Defendant LP Herman Company is an employer within the meaning of 29 U.S.C. § 1002(5),[3] that pursuant to 29 U.S.C. § 1145, it is obligated to make contributions to the multi-employer benefit funds as described above, and that it failed to satisfy that obligation in violation of 29 U.S.C. § 1145. (Compl. ¶¶ 33–35.) Defendant LP Herman Company argues that Plaintiffs' claim in Count One must be dismissed for the following reasons:

> (1) Plaintiffs did not allege the amount of unpaid contributions supposedly owed, the time period during which the company failed to remit the required amounts, or any dates on which Plaintiffs notified the company of any delinquency, and they also failed to attach any audit findings showing any alleged delinquency or any correspondence in which Plaintiffs notified

---

[3] 29 U.S.C. § 1002(5) provides that "[t]he term 'employer' means any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan; and includes a group or association of employers acting for an employer in such capacity." 29 U.S.C. § 1002.

>    the company of the alleged delinquency or demanded payment. (Defs.' Mem. Supp. Mot. Dismiss 1.)
>
> (2) Plaintiffs make only naked assertions that Defendant LP Herman Company failed to make contributions to the various funds and remit the required dues in accordance with the CBA, and do not attach anything to the Complaint showing whether the CBA has expired or changed, what the current contribution rates are, or whether the company assented to pay those contribution rates. (Id. at 1–2.)
>
> (3) Plaintiffs do not allege factual information or include supporting documents from which Defendant LP Herman Company could discern which payments are due and owing and for which employees. (Id. at 2.)

Thus, according to Defendants, Plaintiffs' claim in Count One must be dismissed on those grounds and because it is comprised of conclusory allegations lacking in factual support, which fail to satisfy Plaintiffs' pleading obligations. (Id.) In response, Plaintiffs argue that the Complaint, along with its Exhibits, set forth sufficient facts to establish their claim under § 1145.

29 U.S.C. § 1145 provides that:

> Every employer who is obligated to make contributions to a multiemployer plan under the terms of the plan or under the terms of a collectively bargained agreement shall, to the extent not inconsistent with law, make such contributions in accordance with the terms and conditions of such plan or such agreement.

29 U.S.C. § 1145. To state a claim under § 1145, "the conditions triggering an obligation under the relevant CBA agreement must first be met." Cement Mason's Union Local No. 592 Pension Fund v. Zappone, 501 F. Supp. 2d 714, 718 (E.D. Pa. 2007) (citing Teamsters Industrial Employees Welfare Fund v. Rolls-Royce Motor Cars, Inc., 989 F.2d 132, 138 (3d Cir. 1993) (noting that CBAs trigger obligations under ERISA § 515 and that plaintiffs are "not entitled to enforce a nonexistent contractual obligation"))). "Congress's purpose in enacting [ERISA] section 515 was to allow multiemployer welfare funds to rely upon the terms of collective

bargaining agreements and plans as written, thus "permit[ting] trustees of plans to recover delinquent contributions efficaciously, and without regard to issues which might arise under labor-management relations law. . . ." Cent. Pa. Teamsters Pension Fund v. McCormick Dray Line, Inc., 85 F.3d 1098, 1103 (3d Cir. 1996) (quoting 126 Cong. Rec. 23,039 (1980) (remarks by Rep. Thompson)). Accordingly, "Section 515 of ERISA authorizes civil suits to enforce terms requiring the payment of contributions to a multiemployer plan." Trustees of Nat. Elevator v. Imperial Elevator Serv., Inc., No. Civ.A.10-02592, 2013 WL 3914779, at *3 (E.D. Pa. July 29, 2013) (citing 29 U.S.C. § 1145).

As stated above, the provisions of the Trust Agreements establishing the Health & Welfare Fund, the Pension Fund, the Apprentice Training Fund, the Profit Sharing/Deferred Income Fund, the Labor-Management Cooperation Committee Fund, and the Scholarship Fund obligated Defendant LP Herman Company to make contributions to those Funds. (Compl. ¶¶ 12–18, Exs. C, D, E, F, G, H.) Accordingly, during the effective period of the 2010–2013 CBA, the conditions which triggered Defendant LP Herman Company's obligations to make contributions to the Funds were met.

Defendant LP Herman Company's first argument for dismissal of Count One is that Plaintiffs failed to allege facts regarding (1) the amount of unpaid contributions; (2) the time period during which contributions were not remitted; (3) the dates on which Plaintiffs notified Defendant LP Herman Company of any delinquency; and (4) documentation of audit findings showing a delinquency or correspondence in which Plaintiffs either notified the company of the alleged delinquency or demanded payment. In response to Defendant LP Herman's argument about the time period during which Plaintiffs allege there were unremitted contributions, Plaintiffs assert that they placed Defendant LP Herman Company on fair notice of delinquencies

for the time period covered by the relevant Commercial Agreement that was attached to the Complaint. (Pls.' Resp. Opp'n Mot. Dismiss 8.). The Commercial Agreement is incorporated into Paragraph 12 of the Complaint and attached to the Complaint as Exhibit B, and was in effect from May 3, 2010 until April 20, 2013. (Pl.'s Resp. Opp'n Mot. Dismiss 4.) While it would have been preferable for Plaintiffs to include the relevant dates in the Complaint itself, the attached Commercial Agreement indicates the time frame during which contributions were required. Thus, Plaintiffs have alleged sufficient facts showing that Defendant LP Herman Company was obligated to make the contributions during a particular time pursuant to the Commercial Agreement, and dismissal is not required on that ground.

Plaintiffs also dispute Defendant LP Herman Company's argument about the degree to which they must specify the amount of damages sought at this stage of the litigation, whether they must allege dates on which they notified Defendant LP Herman Company of delinquencies, or whether they must show proof of collection efforts. According to Plaintiffs, the fact that the Complaint does not include factual assertions regarding the amount of delinquencies similar to "the conclusions of an expert with regard to the manner in which damages may be calculated by the plaintiffs at the time of trial" or which reveals "a strategy regarding the manner in which may [sic] damages may be proven at trial" does not require the dismissal of Count One. (Id. at 7.) A valid claim under 29 U.S.C. § 1145 for delinquent contributions requires neither a statement of the precise amount of damages sought, nor proof of collection efforts previously attempted or dates of notification—it only requires an allegation that the defendant failed to make the contributions it was obligated to make pursuant to the terms of a collective bargaining agreement. Accordingly, Count One need not be dismissed on those grounds.

With respect to Defendant LP Herman Company's second argument, as stated above Plaintiffs alleged sufficient facts to show that there was an agreement in place and that it covered the specific time period for which Plaintiffs seek relief.  Plaintiffs argue that the delinquent contributions, penalty, and interest due to the multi-employer benefit funds "are limited to those delinquencies existing within the scope of the time frame established by the effective dates of the Commercial Agreement," and that the existence of any current Commercial Agreement is not relevant to the instant dispute.  (Id. at 5.)  Pursuant to the Letter of Assent, which was attached to the Complaint as Exhibit A, Defendant Lawrence Herman bound Defendant LP Herman Company to the terms of the Commercial Agreement.  (Id. at 5–7.)  Although Plaintiffs did not include specific dollar amounts in the Complaint regarding the current contribution rates, or whether Defendant LP Herman Company assented to paying those rates, such allegations are not necessary to support Plaintiffs' § 1145 claim regarding unremitted contributions during the time that the 2010–2013 CBA was in effect.  Thus, Defendant LP Herman Company's second argument does not require dismissal of Count One.

Finally, Defendant LP Herman Company's third argument—that Plaintiffs do not allege factual information or include supporting documents from which Defendant LP Herman Company could discern which payments are due and owing and for which employees—does not require dismissal of Count One.  Plaintiffs argue that the pleading requirement in Rule 8(a)(2) "does not impose a duty upon the plaintiffs to allege every detail of the defendants' wrongdoing," and that their allegations are sufficient because they include specific factual details about which provisions of the Commercial Agreement were violated, identify the funds to which Defendant LP Herman Company failed to make contributions, and identify the time period during which the failures to make contributions occurred.  (Id. at 11–12.)  At the motion to

dismiss phase, the Court must accept as true Plaintiffs' allegations that Defendant LP Herman Company failed to make required contributions pursuant to the Commercial Agreement that was in effect from 2010 to 2013. The fact that Plaintiffs did not include supporting documents—which may or may not be available to them prior to undertaking discovery—to show precisely which contributions for which employees were not made and in what amount, is not fatal to their claim against Defendant LP Herman Company.

In sum, Plaintiffs allege that Defendant LP Herman Company was obligated to make contributions to multi-employer benefit funds and failed to satisfy that obligation. Failure to make such payments breaches the terms of the Trust Agreements pertaining to the various Funds, as well as the terms of the CBA, and therefore violates 29 U.S.C. § 1145. See Trustees & Fiduciaries of Iron Workers Dist. Council (Phila. & Vicinity) Ben. & Pension Plans v. McGinny Ironworks, Inc., No. Civ.A.11-1463, 2011 WL 5025310, at *2 (E.D. Pa. Oct. 20, 2011). Accordingly, Defendant LP Herman Company's Motion to Dismiss Count One is denied.

### B. Violation of 29 U.S.C. § 1109 (Count II)

In Count Two, Plaintiffs allege that Defendant Lawrence Herman exercised discretionary control with respect to the multi-employer benefit funds described above including, but not limited to, authorizing and tendering the payment of contributions due to those funds, and that he was a fiduciary to those funds within the meaning of 29 U.S.C. § 1002(21)(A)(i). (Compl. ¶¶ 43–44.) Plaintiffs further allege that Defendant Lawrence Herman breached his fiduciary duty by (a) utilizing the assets of the multi-employer benefit funds to satisfy financial obligations not within the meaning of 29 U.S.C. § 1004(a)(1) or (b) retaining possession and control of the monies rightfully belonging to those funds. (Id. ¶ 49.) Defendants argue that Plaintiffs' breach of fiduciary duty claim fails as a matter of law because (1) an individual corporate officer cannot

be held liable as a fiduciary solely by virtue of his office; and (2) corporate management decisions cannot give rise to fiduciary liability under ERISA. (Defs.' Mem. Supp. Mot. Dismiss 2–3.)

29 U.S.C. § 1109 provides that:

> Any person who is a fiduciary with respect to a plan who breaches any of the responsibilities, obligations, or duties imposed upon fiduciaries by this subchapter shall be personally liable to make good to such plan any losses to the plan resulting from each such breach, and to restore to such plan any profits of such fiduciary which have been made through use of assets of the plan by the fiduciary, and shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary.

29 U.S.C. § 1109(a).[4]

"There are only three ways to acquire ERISA fiduciary status: '(1) being named as the fiduciary in the instrument establishing the employee benefit plan, 29 U.S.C. § 1102(a)(2); (2) being named as a fiduciary pursuant to a procedure specified in the plan instrument, *e.g.*, being appointed an investment manager who has fiduciary duties toward the plan, 29 U.S.C. § 1102(a)(2); 29 U.S.C. § 1002(38); and (3) *being a fiduciary under the provisions of 29 U.S.C. § 1002(21)(A)*.'" Delphi Beta Fund, LLC v. Univest Bank & Trust Co., No. Civ.A.14-2404, 2015 WL 1400838, at *5 (E.D. Pa. Mar. 27, 2015) (quoting Glaziers & Glassworkers Union Local No. 252 Annuity Fund v. Newbridge Sec., Inc., 93 F.3d 1171, 1179 (3d Cir. 1996)) (emphasis added). In this case, Plaintiffs argue that Defendant Lawrence Herman acquired fiduciary status

---

[4] Defendant Lawrence Herman correctly points out that, in the Third Circuit, an individual corporate officer may not be liable for a corporate employer's alleged failure to comply with an obligation to make contributions to an ERISA plan in claims brought under ERISA Section 515, 29 U.S.C. § 1145. (Defs.' Mem. Supp. Mot. Dismiss 10–11 (citing Solomon v. Klein, 770 F.2d 352, 354 (3d Cir. 1985).) However, as Plaintiffs note in their Response, they do not seek liability against Defendant Lawrence Herman under § 1145, but rather under § 1109. (Pls.' Resp. Opp'n Mot. Dismiss 13.)

13

under the third method, and is a fiduciary in accordance with the provisions of 29 U.S.C. § 1002(21)(A).

29 U.S.C. § 1002(21)(A) provides that:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). It must be noted that "ERISA defines 'fiduciary' not in terms of formal trusteeship, but in functional terms of control and authority over the plan." Solis v. Koresko, 884 F. Supp. 2d 261, 284 (E.D. Pa. 2012) (citing Srein v. Frankford Trust Co., 323 F.3d 214, 220 (3d Cir. 2003)). Thus, "[u]nder ERISA, even if a person is not named as a fiduciary in plan documents, he or she may still be a fiduciary with respect to a plan to the extent: (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises *any authority or control respecting management or disposition of its assets* . . . ." Id. (citing ERISA Section 3(21)(A), 29 U.S.C. § 1002(21)(A) (emphasis added)). "The statutory definition thus requires that a fiduciary 'must be someone acting in the capacity of manager, administrator, or financial advisor to a plan.'" Id. (quoting Pegram v. Herdrich, 530 U.S. 211, 222 (2000) (internal quotations omitted); Bd. of Trustees of Bricklayers and Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs., Inc., 237 F.3d 270, 272 (3d Cir. 2001)).

"Lower courts[5] have used a two-part test to determine whether fiduciary liability [under ERISA] attaches to individuals: (1) unpaid contributions must be 'plan assets,' and (2) the individual must either exercise discretion in the management of the plan or exercise any authority or control over the plan assets." Local Union No. 98 Int'l Bhd. of Elec. Workers v. Riverview Elec. Const., No. Civ.A.10-1168, 2011 WL 4948825, at *4 (E.D. Pa. Oct. 18, 2011) (citing Trustees of the Nat. Elevator Indus. Pension, Health Ben., Educ., Elevator Indus. Work Pres. Funds v. Gateway Elevator Inc., No. Civ.A.09–4206, 2011 WL 2462027, at *5 n.6 (E.D. Pa. June 21, 2011); Teamsters Health and Welfare Fund v. World Trans., Inc., 241 F. Supp. 2d 499, 505 (E.D. Pa. 2003) (internal citation omitted)). The Court will address each part of the individual fiduciary liability test separately.

1. Whether the Unpaid Contributions Are Plan Assets

"To answer whether unremitted contributions are 'assets' for the purpose of liability under 29 U.S.C. § 1109(a), courts in the Third Circuit look to the terms of the agreement under which the obligation to pay the contributions arise." Trustees of Nat. Elevator Indus. Pension v. Lutyk, 140 F. Supp. 2d 447, 455 (E.D. Pa. 2001), aff'd sub nom., Trustees of Nat. Elevator Indus. Pension, Health Benefit & Educ. Funds v. Lutyk, 332 F.3d 188 (3d Cir. 2003) (citing Galgay v. Gangloff, 677 F. Supp. 295, 301–02 (M.D. Pa. 1987), aff'd, 932 F.2d 959 (3d Cir. 1991) (table) (additional citations omitted).

---

[5] Defendant Lawrence Herman acknowledges that the Third Circuit "has not addressed the specific question of whether a corporate officer performing the duties of his corporate office can be held liable as an ERISA fiduciary for the corporation's failure to make contributions to an ERISA plan," and urges the Court to follow the reasoning of appellate court decisions from other federal circuits finding that corporate owners and/or officers cannot be liable for unpaid contributions. (See Defs.' Mem. Supp. Mot. Dismiss 12–13, 13–16.) In the absence of controlling Third Circuit precedent on this issue, the Court will apply related ERISA case law from the Third Circuit as well as case law demonstrating the reasoning of other district courts from within the Third Circuit, as discussed above.

As stated above, pursuant to the provisions of the Trust Agreements establishing the Health & Welfare Fund, the Pension Fund,[6] the Apprentice Training Fund, and the Profit Sharing/Deferred Income Fund, titles to all monies payable to those Funds vest in the trustees of the Funds in trust "as of the date the employer's obligation to submit contribution to the Funds arises." (Compl. ¶¶ 12–18, Exs. C, D, E, F.) Pursuant to the terms of the agreements for those Funds, the unpaid contributions became "plan assets" at that time, and accordingly the first part of the fiduciary test is met as to those four Funds.

Defendants correctly point out, however, that according to the Complaint, the provisions of the Trust Agreements establishing the Labor-Management Cooperation Committee Fund and the Scholarship Fund provide that, at all relevant times, title to all monies payable to those Funds become vested in the trustees of the Fund in trust as of the date the contributions are *received*. (Id. ¶¶ 17–18, Exs. G, H (emphasis added).) Upon review of Exhibits G and H, the Court did not locate language in those documents specifying when title to monies invested in the Labor-Management Cooperation or the Scholarship Funds becomes vested. Nonetheless, if—as Plaintiffs allege in the Complaint—Defendant Lawrence Herman never made the contributions to those Funds, then Defendants are correct that "the alleged missed contributions are not plan assets, and may not serve as the basis for a breach of fiduciary duty claim." (Defs.' Mem. Supp. Mot. Dismiss 17 n.5 (citing Local Union No. 98, IBEW v. Morris, No. Civ.A.04-1988, 2004 WL 1551673, at *2 (E.D. Pa. July 9, 2004)). Plaintiffs do not appear to contest Defendants' argument, as the portion of their Response dedicated to the "plan assets" aspect of the fiduciary

---

[6] The title to the document submitted as Exhibit D does not actually indicate whether that particular Amendment No. 2 is meant to amend the Pension Fund Agreement. Defendants do not contest whether that exhibit represents part of the Pension Fund Agreement, and for present purposes the Court will take as true Plaintiffs' assertion that Exhibit D comes from the Pension Fund Agreement. In the future, Plaintiffs should be careful to include any and all necessary pages of documents submitted as exhibits.

test only addresses the Health and Welfare, Pension, Apprenticeship Training, and Profit Sharing Funds, and refers only to Exhibits C, D, E, and F to the Complaint.[7] (Pls.' Resp. Opp'n Mot. Dismiss 14.) Accordingly, the first part of the fiduciary test has not been met as to the Labor-Management Cooperation Committee or Scholarship Funds, and Plaintiffs cannot state a breach of fiduciary duty claim against Defendant Lawrence Herman with respect to those Funds. As a result, Defendants' Motion to Dismiss Count Two is granted with respect to the Labor-Management Cooperation Committee Fund and the Scholarship Fund. The Court will continue its analysis of whether Defendant Lawrence Herman qualified as a fiduciary for purposes of § 1002(21)(A) with respect to the other four Funds.

---

[7] "ERISA regulations define 'plan assets' as amounts that a participant pays to an employer, or amounts that a participant has withheld from his wages by an employer." Local Union No. 98, IBEW v. Riverview Elec. Const., No. Civ.A.10-1168, 2011 WL 4948825, at *4–5 (E.D. Pa. Oct. 18, 2011) (citing 29 C.F.R. § 2510.3–102(a)(1)). The regulation in question states that "the assets of the plan include amounts (other than union dues) that a participant or beneficiary pays to an employer, or amounts that a participant has withheld from his wages by an employer, for contribution or repayment of a participant loan to the plan, as of the earliest date on which such contributions or repayments can reasonably be segregated from the employer's general assets." 29 C.F.R. § 2510.3-102.

"When an employer's contribution (not an employee's wage withholding) is the source of funding for a plan, federal regulations are silent, and a court must look to the terms of the agreement to determine whether unpaid employer contributions constitute 'plan assets' under ERISA. Id. (citing Local Union No. 98, IBEW v. RGB Svcs., LLC, No. Civ.A.10–3486, 2011 WL 292233, at *5 (E.D. Pa. Jan. 28, 2011) (citing Bottle Beer Drivers, Warehousemen & Helpers Teamsters Local 843 v. Anheuser Busch Inc., 96 F. App'x 831, 834 (3d Cir. 2004))).

Plaintiffs do not indicate to the Court whether the funding structure for the Labor-Management Cooperation Committee and Scholarship Funds is such that those contributions would be subject to the above-quoted regulation. As stated above, Plaintiffs do not make any argument contesting Defendants' assessment of Complaint Paragraphs Seventeen and Eighteen, which state that contributions to the Labor-Management Cooperation Committee Fund and the Scholarship Fund do not become vested until received. Thus, on the basis of the Complaint, and in the absence of any further explanation from Plaintiffs, those contributions are not "plan assets" for purposes of Plaintiffs' § 1109 claim against Defendant Lawrence Herman.

> 2. Whether Defendant Lawrence Herman Had Authority or Control Over the Plan Assets and is Therefore a Fiduciary Who May Be Subject to Liability

Defendant Lawrence Herman argues that Count Two of Plaintiffs' Complaint "simply parrot[s] the language of 29 U.S.C. § 1002(21)(A) and fail[s] to allege any substantive facts demonstrating that Herman acted as a fiduciary with respect to the actions complained of in the Complaint," that such allegations are based on his authority to make business decisions as an agent and officer of LP Herman Company, and that he acted within the scope of his employment when authorizing and tendering payment of contributions and withholdings.  (Defs.' Mem. Supp. Mot. Dismiss 16.)  The relevant question, however, is whether an individual exercised authority or control over the plan assets, not whether the individual otherwise had the authority to make business decisions or was acting in the scope of his or her employment when exercising such authority or control.  Plaintiffs assert that, pursuant to the Letter of Assent, Defendant Lawrence Herman operated as the owner of Defendant LP Herman Company, bound it to the Commercial Agreement, and performed the duties of a corporate officer.  (Pls.' Resp. Opp'n Mot. Dismiss 14.)  Thus, the parties are not in dispute about Defendant Lawrence Herman's status as a corporate officer.  Rather, they disagree about whether the actions Defendant Lawrence Herman took with respect to the contributions and plan assets qualify him as a fiduciary.  In the Complaint, Plaintiffs alleged that Defendant Lawrence Herman exercised authority and control by authorizing and tendering the payment of contributions that were due to the multi-employer benefit funds, and that he therefore qualifies as a fiduciary pursuant to § 1002(21)(A).  Thus, based on the allegations in the Complaint, Plaintiffs do not seek to hold Defendant Lawrence Herman liable solely on the basis of his role as a corporate officer, but instead seek to hold him liable because he exercised authority and control over plan assets and may therefore be deemed a fiduciary who allegedly breached his fiduciary duty.

Defendant Lawrence Herman asserts that "[t]o the extent Herman can be deemed to be a fiduciary at all, his fiduciary authority would not extend to decisions involving the allocation of LP Herman's assets and revenues." (Id. at 16–17.) Defendant Lawrence Herman does not explain why that would be the case, and, at the motion to dismiss phase, the Court must take as true Plaintiffs' allegation in Paragraph 49 of the Complaint that Defendant LP Herman utilized assets of the multi-employer benefit funds to satisfy financial obligations not within the meaning of 29 U.S.C. § 1004(a)(1) and/or retained possession and control of the monies rightfully belonging to those funds. Moreover, "if the parties dispute the facts that establish the defendant's fiduciary status, including whether the defendant had authority and control over the management and disposition of plan assets, then the issue should not be resolved at the motion to dismiss stage." Edmonson v. Lincoln Nat. Life Ins. Co., 777 F. Supp. 2d 869, 884–85 (E.D. Pa. 2011) (citing Bd. of Trs. of Bricklayers & Allied Craftsmen Local 6 of N.J. Welfare Fund v. Wettlin Assocs. Inc., 237 F.3d 270, 275 (3d Cir. 2001)). The Court also notes that "[b]ecause Congress intended for ERISA to provide broad protection of retirement benefits, the term 'fiduciary' is, as a general matter, broadly construed." Edmonson v. Lincoln Nat. Life Ins. Co., 899 F. Supp. 2d 310, 318 (E.D. Pa. 2012) aff'd, 725 F.3d 406 (3d Cir. 2013) (citing John Hancock Mut. Life Ins. Co. v. Harris Trust & Sav. Bank, 510 U.S. 86, 96 (1993); Curcio v. John Hancock Mut. Life Ins. Co., 33 F.3d 226, 233 (3d Cir. 1994) ("We start from the standpoint that we have previously held that ERISA broadly defines a fiduciary.") (citing Smith v. Hartford Ins. Grp., 6 F.3d 131, 141 n.13 (3d Cir. 1993)))). That broad construction of "fiduciary" as it is used in 29 U.S.C. § 1002(21)(A), coupled with the parties' factual dispute over whether Defendant Lawrence Herman qualifies as a fiduciary for purposes of a claim under 29 U.S.C. § 1109, compels the Court to deny Defendant Lawrence Herman's Motion to Dismiss Count Two of

Plaintiffs' Complaint with respect to the Health & Welfare Fund, the Pension Fund, the Apprentice Training Fund, and the Profit Sharing/Deferred Income Fund.

## IV.     CONCLUSION

In light of the foregoing, Defendant Phyllis Diventi's Motion to Dismiss is granted and Count Five is dismissed.  The Motion to Dismiss by Defendants LP Herman Company and Lawrence Herman is granted in part and denied in part.  Defendants' Motion is granted with respect to Counts Three, Four, and Six, is granted in part and denied in part with respect to Count Two, and is denied with respect to Count One.

An appropriate Order follows.